**UNITED STATES of America**

v.

**Shahram GRANMAYEH.**

**No. CRIM. S 95-0452.**

United States District Court,
D. Maryland.

Jan. 7, 1999.

Larry A. Nathans, Law Office, Baltimore, MD, for defendant.

Harvey Ellis Eisenberg, U.S. Attorney's Office, Baltimore, MD, for U.S.

## MEMORANDUM OPINION

SMALKIN, District Judge.

The Court has considered the petitioner's "Petition to Vacate Conviction," filed October 28, 1998, as well as the Government's opposition thereto. and the petitioner's reply. No oral hearing is needed.

First, the parties seem to agree that the Court should not consider this petition as a motion under 28 U.S.C. § 2255, not only because it is untimely filed under the AEDPA's amendment to Section 2255 limiting such motions to a one-year period after the conviction has become final, but also because the motion has not been certified under 28 U.S.C. § 2244, the petitioner having previously sought, and been denied, Section 2255 relief.

Thus, the Court has considered the present motion only as a petition for a writ of error *coram nobis*, consideration of which is

not, in this Court's opinion (although the Government might disagree) barred by the recent time limitations barring stale Section 2255 motions.

■ Writs of error *coram nobis* are very rarely granted, their issuance being limited to circumstances where an error of the most fundamental character has occurred. *See United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir.1988), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989)(writ properly granted where defendants were convicted of conduct that was not criminal).

■ In this case, there is no contention that Mr. Granmayeh did not engage in criminal conduct. Rather, it is alleged that his guilty plea was improvident, as based on erroneous advice from his counsel. The alleged misadvice was given by his counsel to the petitioner before the petitioner entered his plea of guilty to a cocaine trafficking charge. Mr. Granmayeh contends, and his counsel agrees, that counsel advised him that, although deportable by statute on account of his conviction, he would not be deported from the United States to his native Iran, given the nature of the relationship between the two countries. Both the petitioner and his counsel now state that he would not have pled guilty had he known that he realistically faced deportation, which he now does. (Indeed, Mr. Granmayeh is currently being detained for deportation to Iran.) In seeking the present relief, Mr. Granmayeh argues that, because of his family's political history in pre-Islamic Revolution Iran, he would be in danger were he to be deported to that country.

Review of the record indicates that, during the Rule 11 colloquy, the Court covered the possibility of deportation as a collateral consequence of conviction. The Court specifically inquired of the Assistant United States Attorney whether Mr. Granmayeh was deportable, to which the prosecutor answered "Probably not." A discussion ensued during which the Court asked whether "we are making any deportations to Iran now," to which both the prosecutor and defense counsel replied, "No." The Court then said to Mr. Granmayeh, "In theory, you could be deported but, at the moment, given the situation in Iran, we are not deporting anybody, but I have to tell you, in theory, you could be. Do you understand?" Mr. Granmayeh answered, "Yes." Pet.'s Ex. 11 (transcript of Rule 11 colloquy 12/6/95), at 20.

Thus, it is clear that Mr. Granmayeh understood that deportation remained a future possibility. In the event, due to political climate changes that no one anticipated at the time Mr. Granmayeh entered his plea, deportations to Iran have been resumed.

In support of his position that *coram nobis* relief is appropriate in this case, in addition to claiming that deportation would put the defendant in danger, present counsel relies on the case of *United States v. Subhash Gajendragadkar*, 149 F.3d 1171, 1998 WL 352866, 1988 U.S.App. LEXIS 11656 (4th Cir.1998). In that unpublished opinion reversing a denial of Section 2255 relief, the Fourth Circuit held that an assurance by defense counsel to the defendant that he would never be deported was ineffective assistance of counsel, in that counsel—apparently—should have foreseen that Congress would change existing law with regard to deportability. That unpublished opinion is not binding authority on this Court, and even if it were, it would go only to whether Section 2255 relief is appropriate, not to whether an error of such fundamental magnitude and rarity as justifies *coram nobis* relief infected the proceedings. (In any event, there is no indication in *Subhash* that the trial court, during the Rule 11 colloquy, advised the defendant that he might, indeed, be deported in the future, as it did here.) Thus, unless and until the Fourth Circuit changes its view of the nature of what justifies *coram nobis* relief, this Court is constrained by existing, binding precedent (*United States v. Mandel, supra*) to deny the present petition.

On a humanitarian basis, it would appear that Mr. Granmayeh's deportation is ill-advised, but this is a matter in which this Court, under the separation of powers doctrine, has no power to involve itself. The only hope is that appropriate relief can be obtained either through the executive or legislative branch of the government, both of which have mechanisms available to them to

stop this deportation, though their efficacy is in some doubt.

For the stated reasons, an Order will be entered separately, denying the petitioner's petition to vacate his conviction, construed as an application for a writ of error *coram nobis.*